UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JAMES COSTELLO and JCRL
DEVELOPMENT CORPORATION,

                    Plaintiffs,

                                        MEMORANDUM & ORDER
            -against-                   14-CV-2061(JS)(GRB)


TOWN OF HUNTINGTON,

                    Defendant.
--------------------------------X
APPEARANCES
For Plaintiffs:     Steven A. Morelli, Esq.
                    The Law Offices of Steven A. Morelli, P.C.
                    1461 Franklin Ave.
                    Garden City, NY 11530

For Defendant:      John C. Bennett, Esq.
                    Gathman & Bennett, LLP
                    191 New York Ave.
                    Huntington, NY 11743

SEYBERT, District Judge:

        Plaintiffs James Costello ("Costello") and JCRL

Development Corporation ("JCRL" and together with Costello,

"Plaintiffs") commenced this action on April 1, 2014 against

defendant Town of Huntington ("Defendant" or the "Town"), alleging

violations of Plaintiffs' rights under the United States

Constitution, the Fair Housing Act of 1968 ("FHA"),

42 U.S.C. § 3601 et seq., 42 U.S.C. § 1981, and 42 U.S.C. § 1982.

        Currently before the Court are: (1) Defendant's motion

to dismiss the Complaint pursuant to Federal Rule of Civil

Procedure 12(b) (Docket Entry 7); and (2) Plaintiffs' cross-motion to amend the Complaint pursuant to Rule 15(a) (Docket Entry 10). For the following reasons, both motions are GRANTED IN PART and DENIED IN PART.

BACKGROUND

Before discussing the factual background relevant to Defendant's motion, the Court must first consider the effect that Plaintiffs' cross-motion to amend the Complaint has on Defendant's motion to dismiss.

I.    Plaintiffs' Cross-Motion to Amend

Federal Rule of Civil Procedure 15 governs amendments to pleadings.  FED. R. CIV. P. 15.  Rule 15 provides, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  Notwithstanding these liberal standards, the decision to grant or deny a party's motion for leave to amend "is within the sound discretion of the district court."  Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citing John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994)).  A court may deny leave to amend in circumstances of "'undue delay, bad faith, futility of the amendment, [or] . . . prejudice.'"  Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603-04 (2d Cir. 2005) (quoting Richardson

2

Greenshields Secs., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987)). A proposed amendment is futile where the claims would not survive a motion to dismiss. Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Though Defendant has opposed Plaintiffs' motion to amend, (see Def.'s Reply Br., Docket Entry 13), the Court cannot find in the relatively small record before it any suggestion that granting Plaintiffs' motion would prejudice Defendant, unduly delay the proceedings, or countenance any bad faith. Accordingly, Plaintiff's motion to amend should be granted to the extent that the proposed amendments are not futile.

Plaintiffs moved to amend the Complaint while Defendant's motion to dismiss was pending, thus giving the Court "a variety of ways in which it may deal with the pending motion to dismiss." Schwartzco Enters. LLC v. TMH Mgmt., LLC, --- F. Supp. 3d ----, 2014 WL 6390299, at *1 (E.D.N.Y. Nov. 17, 2014) (internal quotation marks and citation omitted). Because the proposed Amended Complaint has not added any additional parties, (see Am. Compl., Docket Entry 11-2, at ¶¶ 9-11), and because Defendant has had an opportunity to respond to the proposed Amended Complaint, the Court will consider the merits of Defendant's motion in light of the allegations in the proposed Amended Complaint. "Indeed, if the proposed amended complaint cannot survive the motion to dismiss, then plaintiffs' cross-motion to amend will be denied as

futile." Haag v. MVP Health Care, 866 F. Supp. 2d 137, 140
(N.D.N.Y. 2012) (citing Dougherty, 282 F.3d at 88); Schwartzco,
2014 WL 6390299, at *1 (considering a motion to dismiss in light
of the proposed amended complaint); Eskenazi-McGibney v.
Connetquot Cent. Sch. Dist., No. 14-CV-1591, 2015 WL 500871, at *2
(E.D.N.Y. Feb. 6, 2015) (same).

II.  Factual Background[1]

        JCRL is the sole owner of the parcel of land located at
195 West Hills Road, Huntington Station (the "Property").[2]  (Am.
Compl. ¶ 1.)  Costello is JCRL's principal and sole owner.  (Am.
Compl. ¶ 10.)  As far as the Court can tell, three buildings sit
on the Property.  A structure on the eastern edge of the Property
faces West Hills Road and contains a number of commercial rental
spaces.  Two other structures, one immediately behind the
commercial structure and another along the western edge of the
Property, are designed for residential rentals.  The Property is

---

[1] The following facts are drawn from the Amended Complaint and
are presumed to be true for the purposes of this Memorandum and
Order.
[2] The Amended Complaint frequently conflates the interests of
Costello with those of JCRL.  For instance, the Amended
Complaint alleges that "Plaintiffs own" the parcel of land in
question.  (Am. Compl. ¶ 1.) By deed dated March 1, 2006,
however, Costello transferred his interest in the property to
JCRL.  (Defs.' Mot., Docket Entry 7, Ex. A.)  Thus, JCRL is the
sole owner of the property in question.  Awan v. Ashcroft, No.
09-CV-1653, 2010 WL 3924849, at *2 9E.D.N.Y. Sept. 28, 2010)
("On a motion to dismiss, courts may take judicial notice of
public records, such as properly recorded deeds.").

accessible via two driveways: one leading east onto West Hills Road and the other leading north onto 11th Ave. The Property is located in Defendant Town of Huntington, a municipality organized under the laws of the State of New York. (Am. Compl. ¶ 11.) Barry Zippelius, at all times relevant to this litigation, was a building inspector for the Town. (Am. Compl. ¶ 3.)

In 2010, Plaintiffs began renting one of the units on the premises to an African-American tenant. (Am. Compl. ¶ 18.) The unit was rented pursuant Section Eight of the Housing Act of 1937 ("Section Eight"), 42 U.S.C. § 1437f et seq., which provides rental housing assistance to private landlords on behalf of qualifying low-income tenants. (Am. Compl. ¶ 8.) According to Plaintiffs, certain neighbors were unhappy with Plaintiffs' new tenant, and they repeatedly voiced their displeasure to Costello. (Am. Compl. ¶¶ 19-23.) The complaining neighbors accused Plaintiffs of diminishing their property value, and promised Costello that "the Town will get [him]." (Am. Compl. ¶ 21.) At least one neighbor suggested that he "knew" Mark Cuthbertson, a Councilman on the Huntington Town Board. (Am. Compl. ¶ 22.) In response, Costello insisted that he "rent[s] to everyone" and "do[es not] discriminate." (Am. Compl. ¶ 20.)

Shortly after the neighbors threatened Costello, a Town building inspector visited the Property. (Am. Compl. ¶ 24.) The inspector reviewed the Property and informed Costello that the

Property stood in violation of those Town code provisions that prohibited an unfenced pool, high grass, and automobiles on the property. (Am. Compl. ¶ 24.) Costello remedied these violations to the satisfaction of the inspector. (Am. Compl. ¶ 25.)

Three years later, in May 2013, the Town issued Plaintiffs a "complaint report," which outlined a number of Town code provisions of which the Property stood in violation. (Am. Compl. ¶ 29.) Again, the alleged violations included the presence of an unfenced pool, high grass, and automobiles on the property. (Am. Compl. ¶ 29.) Within one week of his receipt of this report, Costello made efforts to remedy these violations. (Am. Compl. ¶ 34.)

Notwithstanding Plaintiffs' attempts to address the issues raised in the complaint report, Town Inspector Barry Zippelius sought a search warrant to inspect the Property for code violations. (Am. Compl. ¶ 36.) According to Plaintiffs, Zippelius intentionally prepared a misleading affidavit in support of the search warrant. The affidavit omitted that the Property had certain certificates of occupancy, relied upon an uncertified survey of the Property that had material errors (including its description of the eastern-most residential building as a wood-framed structure rather than a cement structure), and falsely accused Plaintiffs of attempting to subdivide the property. (Am. Compl. ¶¶ 37-42.) Additionally, Zippelius falsely affirmed that

Costello told him five families resided in one apartment. (Am. Compl. ¶ 40.)

On June 19, 2013, more than twelve Town officials and police officers searched the eastern-most apartments, which were rented to low-income tenants pursuant to Section Eight. (Am. Compl. ¶¶ 43-44.) As a result of the search, the Town issued eight summonses, allegedly "solely [to] harass and retaliate against Plaintiffs for renting to minorities." (Am. Compl. ¶ 47.) After a trial in Suffolk County District Court, JCRL was found guilty of four of the summonses and fined $4100. (Am. Compl. ¶ 58.) Additionally, the court appointed a receiver to assume control of the property. (Am. Compl. ¶ 58.)

As a result of this alleged targeting of the Property by Defendant, both Costello and JCRL allege separate injuries. JCRL alleges that attempts to sell the Property as a result of Defendants illegal actions have been unsuccessful. (Am. Compl. ¶ 60.) Costello, for his part, claims that he now suffers from "recurring headaches, sleeplessness, stress and anxiety." (Am. Compl. ¶ 59.)

As a result of the foregoing, Plaintiffs bring claims for: (1) retaliation in violation of the First Amendment, (2) violation of the Equal Protection Clause, (3) violation of Plaintiffs' Fourteenth Amendment right to due process, (4) violation of the FHA, (5) violation of the Fourth Amendment's

protection against unlawful searches and seizures, (6) violation of 42 U.S.C. § 1981, and (7) violation of 42 U.S.C. § 1982. (Am. Compl. ¶¶ 62-69.)

## DISCUSSION

The Court will first consider Defendant's jurisdictional challenges before discussing whether Plaintiffs have stated a claim for relief.

I. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

A. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings. See Morrison v. Nat'l Austl. Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008). Though the Court must accept the factual allegations contained in the Amended Complaint as true, it will not draw argumentative inferences in favor of Plaintiffs; subject matter jurisdiction must be shown affirmatively. See id.; Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). "A plaintiff asserting subject matter

jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113.

B. Costello's Standing

Defendant first challenges Costello's standing. (Def.'s Br., Docket Entry 7-15, at 7.) Because JCRL is the sole owner of the property in question, Defendant maintains that the claims asserted by Costello must be dismissed for lack of subject matter jurisdiction. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89, 118 S. Ct. 1003, 1009-10, 140 L. Ed. 2d 210 (1998) (holding that a motion challenging the plaintiff's constitutional standing is properly considered as a Rule 12(b)(1) motion).

Standing is a jurisdictional question that determines "the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975). To establish standing under Article III, a plaintiff must show:

> (1) [T]hat he suffered an injury-in-fact--an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical; (2) that there was a causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Carver v. City of N.Y., 621 F.3d 221, 225 (2d Cir. 2010) (internal quotation marks omitted); Liberty Global Logistics LLC v. U.S. Mar. Admin., No. 13-CV-0399, 2014 WL 4388587, at *3 (E.D.N.Y. Sept. 5, 2014). A plaintiff suffers an injury-in-fact where he

has been injured in a "personal and individual way." Lujan v.
Defenders of Wildlife, 504 U.S. 555, 560 n.1, 112 S. Ct. 2130,
2136 n.1, 119 L. Ed. 2d 351 (1992). Thus, whether a plaintiff has
standing "depends considerably upon whether the plaintiff is
himself an object of the action (or forgone action) at issue."
Id. at 561, 112 S. Ct. at 2137; Ritell v. Briarcliff Manor, 466 F.
Supp. 2d 514, 519 (S.D.N.Y. 2006).

All of Plaintiffs' allegations concern Town-action taken
against the Property, and the Property is wholly owned by JCRL.
The Amended Complaint is devoid of any allegations that the Town
took action against Costello independently; the Property, not
Costello, was the object of the Town's actions. Thus, the rights
that the Town allegedly infringed belong to the owner of the
Property. While Costello may feel aggrieved by the actions taken
against his company and although he now suffers from "recurring
headaches, sleeplessness, stress and anxiety," (Am. Compl ¶ 59)
Costello was only "injured only as a result of the injury to
another." Bingham v. Zolt, 66 F.3d 553, 562 (2d Cir. 1995).
Costello's second-hand injury does not amount to injury in a
"personal and individual way," as Article III requires. Lujan,
504 U.S. at 560 n.1, 112 S. Ct. at 2136 n.1; see also Wright-
Upshaw v. Nelson, No. 13-CV-3367, 2014 WL 692870, at *3 (E.D.N.Y.
Feb. 19, 2014) (finding that individual plaintiff could not sue
for losses incurred by charitable organization); Caravella v. City

10

of N.Y., 79 F. App'x 452, 453 (2d Cir. 2003) (affirming dismissal of breach of contract claim for lack of standing where corporation, not plaintiff, was party to the contract); Dore v. Wormley, 690 F. Supp. 2d 176, 186 (S.D.N.Y. 2010) (finding that individual plaintiff lacks standing to bring claims of misrepresentation and misuse of funds where alleged injuries are to congregation); Blakely v. Cardozo, No. 07-CV-3951, 2007 WL 2702241, at *3 (S.D.N.Y. Sept. 17, 2007) (holding that the plaintiff lacked standing to challenge foreclosure because corporation, not plaintiff, was the property's legal owner).[3]

Accordingly, the Amended Complaint's proposed causes of action that are stated on behalf of Costello are subject to dismissal under Rule 12(b)(1). For the remainder of this Memorandum and Order, therefore, the Court considers only the claims stated on behalf of JCRL.

C. Rooker-Feldman

Defendant next contends that the Rooker-Feldman doctrine divests the Court of subject matter jurisdiction because Plaintiffs' action is merely an attempt "to litigate a code

---

[3] For those claims asserted pursuant to 42 U.S.C. § 1983, Costello's bar from participation is even more well-settled, as "the federal courts consistently have held that a corporate officer or shareholder, regardless of his position or degree of share ownership, cannot prosecute his corporation's § 1983 claims." Sterngass v. Bowman, 563 F. Supp. 456, 459 (S.D.N.Y.), aff'd, 742 F.2d 1440 (2d Cir. 1983).

violation case in federal district court." (Def.'s Br. at 11.)
The Rooker-Feldman doctrine divests a federal district court of
subject matter jurisdiction "over suits that are, in substance,
appeals from state-court judgments." Hoblock v. Albany Cnty. Bd.
of Elecs., 422 F.3d 77, 84 (2d Cir. 2005); see also Rooker v. Fid.
Trust Co., 263 U.S. 413, 416, 44 S. Ct. 149, 150, 68 L. Ed. 362
(1923). The doctrine precludes a district court from hearing
"cases brought by state-court losers complaining of injuries
caused by state-court judgments rendered before the federal
district court proceedings commenced and inviting district court
review and rejection of those judgments." Exxon Mobil Corp. v.
Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-
22, 161 L. Ed. 2d 454 (2005). The doctrine therefore applies
where: (1) the federal-court plaintiff lost in state court; (2) the
plaintiff complains of injuries caused by the state-court
judgment; (3) the plaintiff invites district court review and
rejection of that judgment; and (4) the state-court judgment was
rendered before the district court proceedings commenced. Murphy
v. Riso, No. 11-CV-0873, 2012 WL 94551, at *6 (E.D.N.Y.
Jan. 12, 2012) (citing Hoblock, 422 F.3d at 85). "[A] party is
not complaining of an injury 'caused by' a state-court judgment
when the exact injury of which the party complains in federal court
existed prior in time to the state-court proceedings, and so could

12

not have been 'caused by' those proceedings." <u>McKithen v. Brown</u>, 481 F.3d 89, 98 (2d Cir. 2007) (emphasis in original).

Dismissal of JCRL's claims pursuant to the <u>Rooker-Feldman</u> doctrine is inappropriate at this early stage in the litigation because the Amended Complaint may be read to allege injuries that are independent of the state-court proceedings. JCRL alleges that it has been unable to sell the Property. The Amended Complaint is unclear as to whether those sales failed due to the pending state-court-ordered receivership--a direct effect of the state-court judgment--or due to the Defendant's illegally targeting the Property for overzealous code enforcement--an independent injury. While the former is barred by <u>Rooker-Feldman</u>, the latter is not. See <u>Hoblock</u>, 422 F.3d at 85. Thus, it is plausible that the failed sales resulted from Defendant's unlawfully targeting the Property for code enforcement.

Accordingly, insofar as the Amended Complaint alleges that JCRL's injuries are caused by the Town's discriminatory pattern or practice <u>and not by the state-court judgment</u>, the <u>Rooker-Feldman</u> doctrine does not apply, and the Court has jurisdiction over those claims. See <u>Sykes v. Mel S. Harris & Assocs. LLC</u>, --- F. 3d ----, 2015 WL 525904, at *5 (2d Cir., 2015) (discussing with approval district court's refusal to apply <u>Rooker-Feldman</u> doctrine where the claims asserted were independent of any state-court judgments).

II. Defendant's Motion to Dismiss for Failure to State a Claim

A. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949-50; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F. 3d 67, 71 (2d Cir. 1998). However, this limitation has been interpreted broadly to include any document attached to the complaint, any

14

statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

B.    Constitutional Claims

The Amended Complaint attempts to state causes of action pursuant to 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, the Fourth Amendment, and the First Amendment.[4]   The Court discusses each in turn.

1.    Liability Under Monell

Because JCRL's constitutional claims are brought under 42 U.S.C. § 1983, and because a municipality is the only defendant, the Court first considers whether the allegations in the Amended Complaint are sufficient to satisfy Monell's requirements.   See Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 691, 98 S.

---

[4] Because the Court assesses these claims only as brought on behalf of JCRL as the sole owner of the Property, the Court notes as an initial matter that corporations are entitled to the protections afforded by the First, Fourth, and Fourteenth Amendments.  See Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 342, 130 S. Ct. 876, 899, 175 L. Ed. 2d 753 (2010) (First Amendment); Hale v. Henkel, 201 U.S. 43, 76, 26 S. Ct. 370, 380, 50 L. Ed. 652 (1906) (Fourth Amendment); Santa Clara Cnty. v. S. Pac. R. Co., 118 U.S. 394, 6 S. Ct. 1132, 30 L. Ed. 118 (1886) (Fourteenth Amendment).

Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978); <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008).

To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." <u>Cash v. Cnty. of Erie</u>, 654 F.3d 324, 333 (2d Cir. 2011) (quoting <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)). "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Monell</u>, 436 U.S. at 690-91, 98 S. Ct. at 2036 (citation omitted).

To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the

municipal employees.  <u>Moray v. City of Yonkers</u>, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citations omitted).

The Complaint alleges concerted action taken by, among others, multiple building inspectors, the Town attorney, and Councilman Mark Cuthbertson.  It may be plausibly inferred from these allegations that a municipal custom or policy caused the alleged violations.  <u>See</u> <u>Jones v. Bay Shore Union Free Sch. Dist.</u>, 947 F. Supp. 2d 270, 282 (E.D.N.Y. 2013).  Accordingly, JCRL has satisfied <u>Monell's</u> prerequisite to municipal liability under 42 U.S.C. § 1983.

2.  <u>Equal Protection</u>

JCRL first contends that Defendant has violated the Equal Protection Clause by enforcing the Town code more stringently against JCRL than against similarly situated neighbors.  (Am. Compl. ¶ 63.)  JCRL does not allege membership in a protected class, so its equal protection claim falls in the "class-of-one" variety.

At the outset, the Court is mindful that "[c]ourts, including the Second Circuit, have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality--whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments--being transformed into federal lawsuits by an incorrect, overexpansive theory of class-of-one liability."

17

Crippen v. Town of Hempstead, No. 07-CV-3478, 2013 WL 1283402, at *7 (E.D.N.Y. Mar. 29, 2013) (citing Bizzarro v. Miranda, 394 F.3d 82, 88-89 (2d Cir. 2005)); see also 545 Halsey Lane Props., LLC v. Town of Southampton, No. 14-CV-0800, 2014 WL 4100952, at *13 (E.D.N.Y. Aug. 19, 2014); Sacher v. Vill. of Old Brookville, 967 F. Supp. 2d 663, 670 (E.D.N.Y. 2013) ("[A] plaintiff alleging unfair treatment in a zoning/building context, must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged.") (citation omitted).

A plaintiff states a claim for violation of the Equal Protection Clause on a class-of-one theory where the "plaintiff alleges that she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000) (per curiam). Accordingly, JCRL must establish that:

> [N]o rational person could regard the circumstances of [JCRL] to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [ ] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

Camac v. Long Beach City Sch. Dist., No. 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (internal quotation marks

and citation omitted). Regarding the first requirement, courts require an "extremely high degree of similarity between [the plaintiffs] and the persons to whom they compare themselves." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). The high degree of similarity required reflects the fact that the comparative cases are offered to "provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose--whether personal or otherwise--is all but certain." Id. (quoting Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). While the similarity between the plaintiff and the comparators is generally an issue of fact, "this rule is not absolute." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

The Amended Complaint identifies two individuals with whom JCRL alleges to be similarly situated, but neither are sufficiently similar for JCRL's claim to withstand a motion to dismiss. The Amended Complaint first cites Pat McCardle, a resident of the neighboring property that was allegedly not fined for numerous Town code violations on her property. (Am. Compl. ¶¶ 31-32.) Aside from the close proximity of their properties, however, JCRL and McCardle are incomparable. JCRL's property contains multiple structures, commercial spaces, dwellings, driveways, and uses; McCardle's is a single family home. As a

matter of law, the two are not similarly situated.  See Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 60 (2d Cir. 2010) (finding properties used for different purposes not similarly situated as a matter of law); Laidlaw Energy & Envtl., Inc. v. Town of Ellicottville, No. 08-CV-0032, 2011 WL 4954881, at *10 (W.D.N.Y. Oct. 18, 2011) (dismissing selective enforcement claim where plaintiff had vacated the property and thus triggered the applicability of zoning codes different than the comparator); Toussie v. Town Bd. of E. Hampton, 874 F. Supp. 2d 135, 145 (E.D.N.Y. 2012) (properties with different developmental histories not sufficiently similar to state a claim); Missere v. Gross, 826 F. Supp. 2d 542, 562 (S.D.N.Y. 2011) (dismissing class-of-one claim where alleged comparator was zoned differently than plaintiff). Moreover, the code violations on McCardle's property hardly compare to those on JCRL's.  While McCardle allegedly had an unlicensed front and rear deck, an unheated cellar entrance, and an unfenced pool, JCRL was fined for its failure to obtain required certificates of occupancy, operating an illegal massage parlor, and making unauthorized modifications.  (Am. Compl. ¶¶ 47-55.) The difference in violations between McCardle and JCRL drives the wedge between the two even deeper.  See Nemeth v. Vill. of Hancock, No. 10-CV-1161, 2011 WL 56063, at *6 (N.D.N.Y. Jan. 7, 2011) ("Plaintiffs compare the proverbial apples with oranges, attempting to equate enforcement of a fence ordinance or a setback

rule with enforcement of the Zoning Code's non-conforming use expansion regulations.").

The second individual to whom JCRL is allegedly similarly situated is Mr. Joseph Barton, who rents approximately six apartments above two commercial units roughly one half-mile from the Property. (Am. Compl. ¶ 33.) While Barton and JCRL may put their property to similar use, the Amended Complaint does not allege that Barton's property stands in violation of the Town code. This distinction vitiates JCRL's claim of similarity because the Court cannot be expected to look to Barton--who was apparently in compliance with the Town code--for the inference that Defendant illegally demanded JCRL's compliance. See Sacher, 967 F. Supp. 2d at 671 (dismissing equal protection claim that alleged only that comparator was in violation of "various" code provisions).

Accordingly, because the Amended Complaint does not adequately allege that a similarly situated individual received any more favorable treatment than JCRL, JCRL's equal protection claims are subject to dismissal under Rule 12(b)(6). See Ruston, 610 F.3d at 60.

### 3.   Fourth Amendment

JCRL next attempts to assert a cause of action for violation of the Fourth Amendment's protection against unreasonable searches resulting from the Town's search of the

apartments located on the eastern portion of the Property. (Am. Compl. ¶ 67.)

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" California v. Ciraolo, 476 U.S. 207, 211, 106 S. Ct. 1809, 1811, 30 L. Ed. 2d 210 (1986); United States v. Hamilton, 538 F.3d 162, 167 (2d Cir. 2008) (requiring a "legitimate expectation of privacy"). Determining whether one has such an expectation involves a two-part inquiry: (1) whether the individual had a subjective expectation of privacy; and (2) whether that expectation of privacy is one that society accepts as reasonable. Ciraolo, 476 U.S. at 211, 106 S. Ct. at 1811. Generally, because they have turned over possession and use of an apartment to its tenants, landlords do not have a protected reasonable expectation of privacy in a rented apartment. See Mangino v. Inc. Vill. of Patchogue, 739 F. Supp. 2d 205, 234 (E.D.N.Y. 2010) (collecting cases), reversed in part on reconsideration, 814 F. Supp. 2d 242 (E.D.N.Y. 2011); United States v. Cruz, 475 F. Supp. 2d 250, 257 (W.D.N.Y. 2007) ("Ownership of premises alone does not automatically confer standing.").

The Amended Complaint does not allege that the Town searched any area where either JCRL or Costello has a reasonable expectation of privacy. The only areas that the Amended Complaint alleges the Town official searched are the apartments of the

"Section 8 tenants." (Am. Compl. ¶ 44.) Accordingly, JCRL lacks standing to challenge the legality of the search, and its Fourth Amendment claim is subject to dismissal. See Mangino, 739 F. Supp. 2d at 234 (finding that landlord did not have standing to bring § 1983 claim challenging search of tenant's apartment).

### 4. First Amendment Retaliation

JCRL next claims that the Town violated the First Amendment by unlawfully enforcing its code against the Property in retaliation for JCRL's renting to minority tenants. (Am. Compl. ¶ 62.)

"To establish a retaliation claim under section 1983, a plaintiff initially [must] show that [its] conduct was protected by the first amendment, and that defendants' conduct was motivated by or substantially caused by his exercise of free speech." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994) (internal quotation marks and citation omitted) (first alteration in original). Additionally, a plaintiff must allege "some sort of harm," but--at least in this context--that harm need not be a "chilling of speech." Gill v. Pidlypchak, 389 F.3d 379, 383 (2d Cir. 2004).

By renting to and associating with minority tenants, JCRL has engaged in activity protected by the First Amendment. The Amended Complaint is scant, however, on allegations of the Defendant's retaliatory motive. JCRL attempts to ascribe

discriminatory comments made by neighbors of the Property, such as "the Town will get you" and "your life will be hell," to the Town itself. (Am Compl. ¶ 21.) Imputing a retaliatory animus to one based on the statements of an unrelated party is a non sequitir. This Courts and others have repeatedly recognized that alleging a discriminatory (or in this case, retaliatory) animus on the part of an individual who had no meaningful role in the alleged unlawful action is insufficient, as a matter of law, to establish any animus on the part of the decision-maker. See, e.g., Hernandez v. Hampton Bays Union Free Sch. Dist., No. 12-CV-0789, 2015 WL 667844, at *6 (E.D.N.Y. Feb. 13, 2015); Mathirampuzha v. Potter, 548 F.3d 70, 79 (2d Cir. 2008); Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999) (affirming summary judgment where record was devoid of evidence showing that the individual who allegedly harbored discriminatory animus played any "meaningful role" in the adverse-action decision). Nonetheless, the question of an actor's motive is generally a question of fact that should not be decided in the context of a motion to dismiss. Gagliardi, 18 F.3d 188, 195 (2d Cir. 1994) ("The ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint."); Puckett v. Glen Cove, 631 F. Supp. 2d 226, 240 (E.D.N.Y. 2009); Jones, 947 F. Supp. 2d at 276. In light of this liberal standard, and because JCRL sets forth other, albeit thin allegations of discriminatory intent--such as the

harassment curiously beginning after a resident suggested he knew a local councilman, (Am. Compl. ¶¶ 22, 27), and the Town's unlawfully procuring a search warrant (Am. Compl. ¶¶ 36-47)--the Court finds JCRL's First Amendment claim sufficient proceed to discovery.

Notwithstanding the Court's conclusion that JCRL's First Amendment claim is sufficient to withstand a motion to dismiss, the Court observes that JCRL's claim is only barely saved by the liberal pleading standards for motive, and the Court's unwillingness to dismiss the claim at this early pleading stage should not be construed to indicate that the claim will ultimately succeed.

5.  Substantive Due Process

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." Kaluczky v. White Plains, 57 F.3d 202, 211 (2d Cir. 1995) (internal quotation marks and citation omitted). "To plead a substantive due process claim, a plaintiff must allege facts establishing (1) a cognizable property interest (2) that was invaded in an arbitrary and irrational manner." Rankel v. Town of Somers, 999 F. Supp. 2d 527, 546 (S.D.N.Y. 2014) (citing O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir. 2007)).

The only potentially "conscience-shocking" allegations in the Amended Complaint are that Defendant selectively enforced the Town code against JCRL in retaliation for its renting to and associating with minority tenants. Putting aside that courts have routinely held that these "types of allegations of 'improper motives' and 'selective enforcement' on the part of municipal officials fall into the "non-conscience-shocking category[y]," Rankel, 999 F. Supp. 2d at 547 (alteration in original) citing Ruston, 2008 WL 5423038, at *5, those allegations are the same ones that form the basis of the Amended Complaint's First Amendment claim. It is well-settled that where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process. Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005); Mace v. Cnty. of Sullivan, No. 05-CV-2786, 2009 WL 413503, at *9 (S.D.N.Y. Feb. 11, 2009) (dismissing substantive due process claim where plaintiff also sought redress for conduct allegedly constituting the basis of plaintiff's claim under the First Amendment); Cronin v. St. Lawrence, No. 08-CV-6346, 2009 WL 2391861, at *8 (S.D.N.Y. Aug. 5, 2009) (same); Rankel, 999 F. Supp. 2d at 547 (same).

Accordingly, JCRL's substantive due process claim is subject to dismissal because it is duplicative of its First Amendment claims.

C.   Fair Housing Act Claim

The Amended Complaint invokes the [FHA] by alleging a violation of JCRL's right to be free from coercion, threats, or interference on account of its having aided or encouraged the rental of property to minority tenants.

"Although most of the FHA is designed to prevent illegal discrimination on the part of housing providers, one provision specifically prohibits unrelated third parties from interfering with anyone who is attempting to aid others protected under the Act from obtaining housing of their choice." People Helpers, Inc. v. City of Richmond, 789 F. Supp. 725, 731 (E.D. Va. 1992); Frazier v. Rominger, 27 F.3d 828, 833 (2d Cir. 1994) (holding that the FHA protects against "third parties, not necessarily members of the protected class, who aid or encourage protected class members in the exercise or enjoyment of their Fair Housing Act rights"). Section 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person . . . on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section [3604]." 42 U.S.C. § 3617.  Section 3604, in turn, prohibits the "mak[ing] unavailable or deny[ing ] a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C § 3604(a).  To establish a claim under § 3617, a plaintiff must show "(1) that they aided or encouraged members of a protected

27

class in the exercise or enjoyment of their FHA rights, and (2) that as a result of their actions, they suffered coercion, intimidation, threats, interference or retaliation." <u>Wentworth v. Hedson</u>, 493 F. Supp. 2d 559, 565 (E.D.N.Y. 2007); <u>see also</u> <u>Johnson v. Levy</u>, 812 F. Supp. 2d 167, 179 (E.D.N.Y. 2011); <u>Puglisi v. Underhill Park Taxpayer Ass'n</u>, 947 F. Supp. 673, 696 (S.D.N.Y. 1996), <u>aff'd</u>, 125 F.3d 844 (2d Cir. 1997).

JCRL has alleged both that it "aided or encouraged" its tenants' exercise of their rights under the FHA, <u>Wilkey v. Pyramid Const. Co.</u>, 619 F. Supp. 1453, 1455 (D. Conn. 1985) (holding that showing apartments and accepting applications constitutes aiding or encouraging), and that it has suffered harassment from the Town. Whether JCRL has properly alleged that the Town's harassment occurred <u>as a result</u> of its aiding minority tenants is a closer question. As with JCRL's First Amendment claim, the Court sees little relationship between the comments of JCRL's neighbors and the Town's discriminatory animus, and the Amended Complaint's remaining allegations of the Town's motive are thin at best. Nonetheless, again because allegations of motive are difficult to plead with specificity, the Court allows JCRL's FHA claim to proceed to discovery, albeit with the same diffidence that it allows JCRL's First Amendment claim to so proceed. <u>But see</u> <u>Roth v. City of Syracuse</u>, 96 F. Supp. 2d 171, 183-84 (N.D.N.Y. 2000), <u>aff'd</u>, 4 F. App'x 86 (2d Cir. 2001) (dismissing FHA claim because

the plaintiffs produced no evidence of any racial animus <u>by defendants</u>).

    D.   <u>Remaining Claims</u>

       The Amended Complaint also states causes of action for Defendant's alleged violation of 42 U.S.C. § 1981 and § 1982. Section 1981 establishes that all persons have equal right to make and enforce contracts, while § 1982 establishes that all persons have equal right to purchase, lease, sell, hold, and convey real and personal property. 42 U.S.C. §§ 1981, 1982. Due to their related origins and language, the two sections are generally construed <u>in</u> <u>pari</u> <u>materia</u>. <u>Choudhury v. Polytechnic Inst. of New York</u>, 735 F.2d 38, 43 (2d Cir. 1984). Accordingly, the Court considers these purported causes of action together.

       To state a claim under either provision, a plaintiff must allege "(1) they are members of a racial minority; (2) an intent to discriminate on the basis of their race by defendant; and (3) the discrimination concerned one or more activities enumerated in §§ 1981 or 1982, <u>e.g.</u>, making contracts or the purchase of personal property." <u>Shen v. A&P Food Stores</u>, No. 93-CV-1184, 1995 WL 728416, at *2 (E.D.N.Y. Nov. 21, 1995). The first element has been modified so that a plaintiff need not be a member of a racial minority so long as the plaintiff has alleged an injury deriviate of defendant's discriminatory actions against a racial minority. <u>Puglisi</u>, 947 F. Supp. at 700.

JCRL has alleged that the Town has interfered with its right to contract and sell its land insofar as the Amended Complaint alleges that JCRL has been unable to sell the Property because the Town has targeted it due to the presence of minority tenants.[5]  Additionally, the Court has already discussed its concern with but ultimate approval of JCRL's allegations of the Town's motive.  Accordingly, the Court finds that JCRL's § 1981 and § 1982 claims are sufficient to survive a motion to dismiss.

III. Leave to Replead

Given that Plaintiffs have already attempted to cure any defects in their initial complaint in response to Defendant's motion to dismiss, but have still failed to properly state certain claims, the Court declines to afford Plaintiffs the opportunity to replead these claims.  Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) (noting that denial of leave to replead is appropriate in light of "repeated failure to cure deficiencies by amendments previously allowed."); Sanders v. Grenadier Realty, Inc., 367 F. App'x 173, 177 (2d Cir. 2010); Schwartzco, 2014 WL 6390299, at *12.

---

[5] The Court recognizes the overlap in JCRL's § 1981 and § 1982 claims in that both arise out of the same allegations.  The Court is obliged, however, "not to forget the broad and sweeping nature of the protection meant to be afforded by these statutes."  Olzman v. Lake Hills Swim Club, Inc., 495 F.2d 1333, 1339-40 (2d Cir. 1974).

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss (Docket Entry 7), considered as directed at the proposed Amended Complaint, is GRANTED IN PART and DENIED IN PART. Specifically, Defendant's motion to dismiss is DENIED with respect to JCRL's claims arising under the First Amendment, the FHA, 42 U.S.C. § 1981, and 42 U.S.C. § 1982; Defendant's motion is otherwise GRANTED. All of the claims alleged on behalf of Costello are DISMISSED WITH PREJUDICE, and JCRL's Equal Protection, Substantive Due Process, and Fourth Amendment Claims are DISMISSED WITH PREJUDICE.

Concurrently, Plaintiffs' cross-motion for leave to file an amended complaint (Docket Entry 10) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to JCRL's First Amendment, FHA, 42 U.S.C. § 1981, and 42 U.S.C. § 1982 claims.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:    March __25__, 2015
          Central Islip, New York